So our last case for this morning is 2005, I'm sorry, 525-0013 People v. Jeffrey Knapp. I've got Ms. Rae here on behalf of the state as the appellant in this particular case, and I've got Ms. Punjabi here on behalf of the defense. You ready to proceed? May it please the court, counsel, I am Becky Rae with the appellant prosecutor's office representing the people. The only issue in this case is whether the trial court abused its discretion in imposing the most severe sanctions against the state by dismissing the charges against the defendant. It did abuse its discretion in dismissing the charges against the defendant, and this Defendant did not challenge the jurisdiction of this court in his answer brief, so I'll stand on the arguments in my opening brief on that issue unless the court has specific questions. I'd like to delve into the sanctions imposed. The defendant filed a motion for sanctions on December 13, 2024, and a hearing was held. The court only heard the parties' arguments. There was no evidentiary hearing at that time. No witnesses were called. Defendant stated that he had no doubt the state had tendered everything in its possession, a sentiment which was echoed by the prosecutor. The state represented the detective's report indicated some downloaded files may be incomplete due to encryption or deletion prior to the devices being examined. The state also represented the detective was still working through the materials in its possession to see what might be available to disclose in the future. Sanctions were not appropriate because defendant had failed to indicate what information was missing and how not having that information would prejudice him. The defendant admitted in his argument at the sanctions hearing that he drew conclusions that he was missing discoverable materials such as social media accounts, text messages, and videos. Despite having previously stated he had no doubt the state had tendered everything in its possession, he then argued the state's actions were egregious and in bad faith. I submit to you the state's actions were not egregious, nor were they in bad faith, and regardless, while the defendant alleged Brady and constitutional violations in his sanctions motion, the defendant has now abandoned that due process argument, explicitly conceding there were no due process violations in this case and has conceded the issue. So I'm going to focus on the discovery violation. Whether a discovery violation occurred is reviewed under an abuse of discretion standard. The appropriateness of a sanction imposed for an alleged violation of discovery is also reviewed under an abuse of discretion standard. Abuse of discretion, as this court knows, is when the trial court's, excuse me, when the court's decision is fanciful, arbitrary, or unreasonable, or is a view with which no reasonable person would agree. The trial court in this case abused its discretion. The trial court dismissed the case here without ever stating that a discovery violation had occurred or that the state had violated a previous court order regarding discovery. The defendant conceded in the court below more than once that the state had provided everything in its possession to him, and the state further explained why it was unable to tender, at the time of the sanctions hearing, any additional evidence. The evidence either did not exist because the files had been deleted or encrypted prior to law enforcement examination, or law enforcement was still analyzing the evidence. Defendant's argument that the state did not make diligent efforts to obtain the request of discovery is rebutted by the record. The state represented it had contacted and personally spoken to the investigator to inquire about the materials the defendant requested each time the defendant contacted the state's attorney's office or the prosecutor personally. The state notified the defendant of its efforts and saved the email correspondence regarding that. The state requested a report from the detective who was analyzing the materials, Tim Lawrence, explaining why only the partial videos or images might be downloaded or even completely unavailable. The state was required to ensure at least a free flow of information between it and law enforcement, and it did so diligently and repeatedly, attempting to comply with the court's duty. However, the state simply cannot produce what does not exist, which brings me to the next point I want to argue. Before we get to that point, let me ask you that question. There's a lot of technical information included in this case. Yes, Your Honor. So a layman's question, why can't it all be digitally handed over, not just limited to what the detective has analyzed? Is that a possibility? Well, to be honest, I don't know if that's a possibility. There was no evidentiary hearing held at this sanctions hearing, so we don't even know if the evidence was available to turn over digitally or not. We don't know what evidence there was, and that's the point. The defendant has a burden to prove that there's evidence that exists that he has not received, and we don't know that that's the case. And to turn over the evidence digitally would have to be downloaded, and that runs into the problem which Detective Lawrence indicated in his report, that some files might have been deleted or encrypted and could not be turned over. If you're asking could the physical hard drives be turned over to the defendant, well, that's giving the defendant the evidence against him, and then the state wouldn't have that evidence to present at trial. So in order to be able to turn it over digitally or electronically, there would have to be some sort of copying or downloading, and therein lies the problem as Detective Lawrence's report indicated. I'm asking this under Supreme Court Rules 411, 412, and 13, which are the rules that cover discovery. There are certain things you're required to turn over. If the defendant gave a statement, you're required to turn that over. You're to disclose witnesses you intend to call. You don't have to disclose witnesses you're not going to call unless they're exculpatory. What about in this context of digital evidence or recordings or whatever? It's not been analyzed fully, so you don't know if it's exculpatory or inculpatory. So are you required to turn something over that you don't know what the ultimate use of the evidence is going to be? Your Honor, I think you're exactly correct. No, I don't think that you're required to. You have to provide names and addresses of the state's witnesses that will be called at trial. There were no recorded statements. The defendant's written or recorded statements. Documents are intangible to be used at trial. And material or information in the state's possession tending to negate the defendant's guilt or reduce his punishment. Until that evidence has been analyzed, you are exactly right that you don't know whether it's inculpatory or exculpatory. You don't know if the witness is involved, and that would be called at trial or if they weren't. And I think that establishes the point right there. Until the state has analyzed, the detective has analyzed that evidence, we aren't even sure it pertains to the named victim in this case, HH. It may be a completely different victim for which no charges had been filed. And the defendant hasn't shown how that would be relevant, and he hasn't shown how not turning over that particular information would prejudice him. And so I think he hasn't met his burden here to sustain a discovery violation, and therefore I think the trial court abused its discretion in dismissing the case against the defendant. That brings me to another question. Also implicit in the rules, in the discovery rules, is a requirement for ongoing discovery. As you come across new information, new evidence, you have to disclose that if you're going to use it. But would it then be an abusive discretion to punish the state for not turning over stuff that had not been analyzed yet? I mean, that kind of seems to go hand in glove that if it's not been analyzed, once it is analyzed and you're either going to use it or it's exculpatory, you have to turn it over. But wouldn't you say it's premature to punish the state when that's not been done yet? I actually think it was premature to punish the state for not turning over evidence that it's not even certain would be used in the case. On the other hand, though, if you take forever to analyze stuff, you're kind of to the defendant's detriment. They don't have enough time. If there's a speedy trial demand, I don't know if there was in this case, but you can't just sit on evidence for 160 days or 180 days or 200 days and the defendant's sitting there in the dark not knowing what you're going to use. I mean, it seems like there should be some timeliness to analyzing and turning over. Is there not? The statute says when practicable. And there is an ongoing duty to disclose. You are correct. And the state is doing that. And the state represented it would continue to do so. The state's terming herself represented that to the court, that it would continue to do so as the evidence was analyzed and as they determined whether or not it was going to be used. You are correct. You can't just sit on it indefinitely because that's not fair or just. But this case had not been going on for very long either. And as defense counsel even acknowledged in the trial court, information in this case was voluminous. Initially, he got some electronic evidence, a video, I believe, a report that was over 100 pages long and some other things. And there was still quite a bit more to analyze. So it just takes time. Had all the evidence been gathered because they were getting stuff from Snapchat and Instagram and I don't know what all sources they were having to request information from, but had everything been gathered and were just at the point of analyzing it now or were they still gathering? I don't think that that is a question I can answer because it's not on the record. I do know that there was a subpoena issued to Snapchat or Snap Inc, I think it's called. But there was no return on that subpoena in the record. And so no indication what, if anything, had been returned from that subpoena. So I know they were attempting to gather. I know they had seized some of the defendant's devices and were analyzing those. And there was also allegations of some text messages or e-mails that had been sent to and from various people. We don't know if those were between the defendant and the victim, in this case HH, or if they were between the defendant and other people who weren't named in the charge. But I'm sorry, I think I lost track of where I was. There was voluminous information. I don't know if they had gathered everything or were still in the process of that. May I get a drink? Absolutely. May I follow up on Justice Vaughn's question, please? Of course. And I understand happily I'm going to ask you the same thing, too, if you'd respond to it. But I wasn't real clear from reading the briefs and the record what specifically was violated here as far as discovery rule by statutory number or a court's order on compliance. What's your view on that? I agree with you. I don't think the defendant made it very clear. In his motion for sanctions, he had argued Brady and constitutional violations. He also argued, I believe, Rule 412 violations. He also argued violation of the court's discovery. However, as I indicated in my brief, I don't think there was any discovery violation here. He hasn't shown specifically that there was any information left to turn over to him that was pertinent to this case. And the State had represented more than once, I believe, that they had turned over everything that they intended to use in this case involving H.H. and that they would not use anything that had not been disclosed to him. Additionally, I believe I mentioned it. I know I mentioned it in my brief. The trial court didn't set a date specific for the State to turn over its discovery to the defendant. It had granted the State a continuance, I believe, at least once to do that. And when the court mentioned, could you do it in 21 days, and the State said yes, the defense even then said, well, I think it's going to take 45 days to get that done at least, and then I'll need time to analyze it. So the State was even conceding that the 21-day deadline wasn't hard and fast. And so I don't think, and the trial court never said the defendant violated any discovery rule. And so I think therein lies the issue that the trial court imposed the most harsh of sanctions in dismissing this case for a violation that it didn't even find had occurred. Thank you. Now I get to follow up on both of these questions. To follow up, I believe in this case the defendant was, there wasn't, I don't know if it was a speedy trial, but he was not in custody, he was living out of state, Oklahoma or Kansas, Nebraska, somewhere. It wasn't like he was sitting in jail somewhere awaiting trial, a speedy trial. So that wasn't an issue of, you know, time is of the essence, so to speak, with him sitting in jail, correct? You are correct. There was no speedy trial demand filed. He had never been arrested in this case. He received a sentence for his first appearance. He was, even though it was a felony case, and when you're on bond in a felony, you're required to stay in the State of Illinois, he was given permission to reside in his home state, which is Topeka, Kansas. He did not have to travel to court for minor court hearings. He was allowed to appear remotely. He was given the opportunity to have discovery disseminated directly to him so he could view it at his leisure. Yeah, I mean, he received all the conveniences that someone charged with a felony would not normally receive. It was simply a minor inconvenience for him to remain under these charges while the state continued to investigate. It wasn't a matter of prejudice or, yeah, I mean, it just wasn't a matter of prejudice against him. He would have had time to review the information as the state continued to turn it over to him before he was set for trial, and it wasn't even set for trial. And to that point, and I think that's what was brought up by Justice Vaughn is, you know, obviously the duty to disclose is, you know, diligence when you get it, and obviously if a trial was set on, say, in a week and the state or defense dumped, you know, all this evidence that they, quote, unquote, maybe newly acquired, then there's motions of limity to, you know, there's motion to bar based on several theories. So, you know, there are other avenues to keep evidence out if there is a, you know, late discovery. So that could have been utilized if that came to fruition in a particular case. That's correct. I see my time's up, and may I respond to that? Absolutely. There were other enforcement powers that the trial court could have used short of dismissal. It could have excluded, although as a last resort, nondisclosed evidence, but even there are numerous cases that say, you know, even evidence that gets disclosed on the eve of trial or even day of trial can still be utilized depending on circumstances. So there's numerous cases out there that say that. As you said, the defendant could have filed motions of limity to exclude those which the trial court could have then granted. The defendant could have requested and the trial court could have issued subpoenas to law enforcement for disclosure of the evidence. That was not even requested. The defendant only requested the harshest sanction, which was dismissal. So there were still enforcement powers that the trial court could have utilized and just didn't, and there's no indication that the court used its discretion in deciding. It simply took what defendant had requested and granted it. And my last, does it make a difference that the dismissal was, without correctness, basically giving the state a chance, if you did get this information, you can refile and we can go that way? I addressed that in my brief as far as the jurisdiction issue. Statute of limitations, by my calculation, and I'm not perfect by any means with math, but by my calculation. By the time that the trial court had dismissed the charges against the defendant, it was beyond the statute of limitations for the state to have refiled it. This is the only remedy. Okay. I just wanted to be sure. Yes. Okay. Two more questions, if I can remember my questions. I guess the first question is, as between the argument of there was no discovery of violation or the sanction was too harsh, which do you believe is your strongest argument? Well, can I say both? But let me rest on it was too harsh. There were other avenues to address these issues based on what had been done, and the trial court didn't address any of them. It simply dismissed the charges. There were other ways to remedy what the defendant alleged to be a discovery violation. Again, that's not proven, so I would stand by that as well. I have a question, and just to shorten this a little bit. Yes. Do we know from the record the evidence that was not disclosed where it came from? Did it come from the victim's account, or did it come from the alleged victim's account, or did it come from the defendant's account? Or where did this nondisclosed information come from that they were still analyzing? I don't think it's known exactly where all of it came from. I do know that they had seized the defendant's devices. That's in the record, and that those were being analyzed. Again, I did notice that a search warrant was issued to Snapchat. It doesn't appear that anything had been returned from that, even the defendant, and none of it did look like anything had been returned. That kind of takes to my next point or question. If it's coming from the defendant, he presumably knows what it is. It may not have been analyzed yet. It may be encrypted, but he presumably knows what it is. But there's no allegation from him that it's exculpatory evidence. He just said it wasn't disclosed yet. I can't see what it is. That's exactly correct. If the defendant made the statement in an email or text message or a post or whatever, certainly he knows what that is. And there was no allegation that it was either material or exculpatory. And so I don't think the defendant has met his burdens. He didn't get a discovery violation sanction. Thank you. Anything else, Justice Hackett? No, thank you. Thank you, counsel. You'll have your rebuttal. Okay, thanks. All right.  May it please the Court. My name is Deepa Punjabi, and I represent the FLE Jeffrey Knapp. This Court should affirm the trial court's judgment in this case because it was not an abuse of discretion, and that is to say it cannot be considered a fanciful, arbitrary, or unreasonable decision to deny the State's request for a continuance and dismiss the case. And that is because the trial court in this case was faced with circumstances where this was an investigation that had been pending for two and a half years. The State, after having had permission to search Mr. Knapp's devices for about 21 months, the State repeatedly failed at the hearing to offer any assurance to the Court that the requested discoverable materials could ever be intended to the defense. Instead, the State asked for an indefinite amount of time in which it might or might not be able to provide the requested evidence. It was not an abuse of discretion to deny such a request. Now, it's clear there was video and electronic message evidence that existed that the police relied on in investigating Mr. Knapp that was not tendered by the State to the defense. There was some video material that was tendered. There was a single video that purported to be the unauthorized recording at issue. But what defense counsel was asking for was that the State should have turned over, in complete form, all of the electronic message conversations that the police reviewed, that Lieutenant Lawrence reviewed, and then summarized in his report, as well as in videos that the report referenced as well. The defense alleged, and the State did not dispute at the hearing, that this 100-page report contained references to and summaries of videos and electronic message that the police had clearly reviewed at least some of them in their original, complete form, and then merely summarized this evidence rather than providing an incomplete, original, unredacted form as the trial court's discovery order required. And we know that at least some of this material, particularly the Snapchat messages that Detective Emery reviewed on Mr. Knapp's Snapchat account, NerdyMaker69, which was the account that he used to correspond with the complainant, some of these messages we know from Detective Emery's summary in the complaint for search warrant were highly relevant to allegations of making unauthorized sexual recordings because it described other such instances of this conduct. We know that the messages very likely would have contained correspondences with the complainant because she reported that this is how they conducted their relationship over this specific Snapchat account and Instagram and text message. And Mr. Knapp was entitled to all of that under the court's discovery order, as well as Rule 412, which does say that statements made by the accused must be tendered. And, you know, it was on the base, we know that also that the police relied on these materials in investigating and ultimately charging Mr. Knapp. Detective Emery was able to conduct a pretty exhaustive review of Mr. Knapp's Snapchat messages, and although there's no return of warrant in the record, he does say in his complaint for search warrant, you know, I searched the subpoena on Snap and then I was able to conduct this exhaustive review, so I think it's implied that the warrant did, you know, yield some significant investigative material and he was able to conduct an exhaustive review of Mr. Knapp's pertaining to his sexual relationships with women, what Detective Emery appeared as Mr. Knapp's, described as his MO, as well as other instances in which Mr. Knapp appears to have orchestrated other unauthorized recordings and sexual assaults. And it was on the basis of all this information that he was able to get the warrant to search the devices to be granted. So these electronic messages existed. The investigating officers relied on them. They had a duty to preserve those materials in their original form at the time they were reviewing them and to place those evidentiary materials in their possession. And I understand that SIU didn't have the capacity to download the messages, but at a minimum, Detective Emery could have photographed the messages or screen captured them to preserve them in some form. Now, the state insists these evidentiary materials were not in their control or the police's control or simply did not exist. But at the hearing, defense counsel literally read aloud the statements Detective Emery made that he was quoting word-for-word statements by Mr. Knapp in conversations on his Snapchat. And defense counsel asked, where are those conversations? You clearly reviewed them. Instagram and text messages are probably likely to have similar materials. Where are they? Why have they not been tendered to me? And the state didn't really have an answer except to speculate that Mr. Knapp might have remotely deleted them, which is pure speculation. There is not one scintilla of evidence showing that is what occurred. And, you know, it was the state at this point that had had control of these devices for the last 21 months. Let me flip the question. I ask opposing counsel and ask you, which do you think is your strongest argument for affirming the trial court, that it was a discovery violation of the trial court's rule or a 412 violation or if we apply the abusive discretion standard, that means we need to go along with what the trial court ruled. Which do you think is your strongest? I'm sorry. You're asking whether it was my stronger argument is that a discovery violation occurred or whether it was an appropriate sanction. Well, yes, both. I guess the discovery violation, was it a discovery violation of Supreme Court Rule 412 or was it a discovery violation of what the trial court had ordered them to turn over? Well, the violation occurred under both. But I would say that Rule 412 unquestionably requires disclosure of these materials. You know, certainly under A2, the statements made by Mr. Knapp. But if they're encoded or encrypted, how does the state know which ones are statements and which are? Because we know that the police viewed some of these in uncoded and in unencrypted form. At least some of these messages, they did view these conversations in complete original form. It's clear from the record. Detective Emery viewed these and then later had trouble retrieving them. You know, if the police, in this case, failed to photograph or clone these discoverable materials in time, and I'll just point out, the devices were seized, according to Detective Emery, from Mr. Knapp's house in December of 22. The police didn't submit their warrant to search the devices until March of 23. So it's not that they were moving with all due speed here if they were afraid that these, Mr. Knapp might remotely delete something, which I'm not saying that happened because there's no evidence of it. But the state, I mean, the police were not moving with diligence or speed here. But, you know, the fact remains that it's clear from the references in the report and in Detective Emery's complaints that so many conversations, there were significant materials that the police did have a chance to view in unencrypted, complete form, and then Lieutenant Lawrence summarized these conversations and then later, for some reason, was having trouble retrieving them. And if the police, in this case, failed to photograph or clone these discoverable materials, such as statements made by Mr. Knapp on the Snapchat, which Detective Emery quotes word for word, these are clearly discoverable. And if they failed to preserve or clone these materials when they first reviewed them and are now subsequently having trouble retrieving them, as the state told the trial court they were having, then even though that may have been an inadvertent error for them not to preserve it immediately when they first viewed these conversations in their full form, the resulting failure to be able to provide these materials is still a discovery violation attributable to the state. And there is no question that these materials would have been pivotal to the defense. These video images and electronic messages were the entire corpus of the case. The whole of the relationship between Mr. Knapp and the complainant would have been contained in this material because their relationship was conducted over these platforms of Instagram, Snapchat, and text messages. This was a long-distance relationship conducted remotely over these platforms, and the defense needed to show that there was a history of a consensual relationship and consensual exchanges of sexual videos between himself and the complainant. That's what the relationship began from and was premised on. And he needed to show that to rebut allegations of non-consent. And I understand the state may not think that evidence is important or relevant because from their perspective, they can have the complainant come to trial, be confronted with the one single video, testify it was taken without consent, and that's the end of the story from their perspective. But the point is not whether the state can proceed without these discoverable materials. It's whether the defense can proceed without examining these materials. You had a case where the entire relationship between Mr. Knapp and the complainant began from and was premised on her consensually providing sexual video content to Mr. Knapp online. So it would have been of real importance for the defense to examine the correspondence and electronic communications here. These materials would have been vital to the defense, in fact. And it's also the case, as Detective Emery pointed out in his complaint for search warrant, that there was potentially admissible modus operandi evidence here, other crimes evidence that could have come in. And so defense counsel needed to know what he was dealing with here, what could come in against his claim, to be able to prepare a defense. Let me ask you if you would address the question that I had asked the opposing counsel about technically what is possible. All this is in digital form. Could not the same digital information that was provided to the detective be provided to the defendant in the same form? Well, I think certainly photographs, a very low-tech, easy way for them to have preserved and tendered to the defendant, and this is what should have occurred, and this is what often does occur, is that they should have, at a minimum, if he had no, you know, I understand the SIU Police Department didn't have the downloading capabilities in their office. They should have photographed and screen-captured the text messages as he was reviewing them in their complete form, because then later he was not able to retrieve them. And so I think, at a minimum, that would have been a very easy way to tender exactly what they reviewed to the defense, and that is what should have occurred. And one of your points is that there were summaries conveyed in discovery to the defendant, but the original format, the totality of the information was not conveyed. That's correct, and the State does not dispute this at the hearing. Lieutenant Lawrence clearly reviewed actual, original conversations on Mr. Nantz's accounts that were referenced and summarized in his report, but not the actual conversations, and that was a violation of the court's discovery order, which said that the evidence needed to be tendered to the defense in its complete, original, unredacted form. So that was the basis that the defense filed a motion for sanctions, because it was a violation of that discovery order, but it was also a violation of Rule 412. Under Rule 412, the State was obligated under that rule to tender these evidentiary items based on tangible and documentary evidence belonging to the accused, which is A5 of the rule. Documentary evidence has been interpreted as digital conversations online by our case law, so that applies, as well as statements made by the accused under A2 of the rule. You know, the electronic messages the investigators reviewed necessarily included many statements by Mr. Nantz himself, because they were his messages on his accounts, and Detective Emory even quoted some of those statements, and the defense told the trial court, where are these conversations? He's quoting them. I'm only getting a little snapshot of them. Why don't I have the whole conversation? You know, it's also the case that no other remedy here could have substituted for not having those materials, because it prevented the defense from challenging the consent element, and it's true the case had only been pending for 10 months at this point, but this is an abusive discretion standard, and I think the court was absolutely entitled to consider that the, in exercising its discretion, that the investigation had been pending for two and a half years at this point, and the police had the approval to search the devices for 21 months at this point, and the court was entitled to consider all of that and conclude nothing would change if they granted another two months or four months or whatever, especially because the state never came to the court and said, please give us a specific amount of days within which we will provide specific evidence. The state repeatedly failed to offer to the court that such evidence could ever be obtained. The state basically shrugged. Did the court have a deadline on the state saying you've got 120 days or you've got 90 days to turn this over, or we're going to have... Did the court do that? Did the court ever do that? The court didn't... Well, with the original discovery order, the court said you had 21 days, and that deadline came and went. The defense filed a motion for sanctions, and the court never said at the hearing on the motion for sanctions you have 120 days or whatever it may be. The state also never asked for it. What the state said is, shrug, we don't know if we may ever be able to produce this evidence. We don't know if we'll ever be able to provide these conversations in their original form, even though the police clearly reviewed them in their original form. The court wasn't obligated to grant a continuance under those circumstances because the state gave no reason to think anything more could be produced. Again, this was an investigation that had been pending for two and a half years at this point. How should we view the statement of the defense attorney that said, basically, I think the state has given me everything? I think what the attorney was saying, to put that in context, is the state, the prosecutor, has given me what they have in their office. But, again, I mean, when the police fail to provide or preserve discoverable materials that they've relied on in their investigation, which occurred here, our case law holds that courts are to attribute those violations to the state. So what you're saying is the defense attorney is saying the state's attorney did what they could, but the state, in the larger perspective, being the detective, has not? Being the law enforcement here, yeah. The state, the attorney said, you know, I'm not, there may have been an inadvertent error here, but it was still a discovery violation, and even if the police made an inadvertent error in not immediately cloning and photo capturing all the evidence it was reviewing, that's still a violation attributable to the state. And neither would exclusion have been an adequate remedy here, because, again, the issue was not whether the state could proceed without the evidence, but rather whether the defense would have the capacity to proceed in any intelligent way to prepare for this case when the whole of the relationship between the defendant and the complainant was contained in those conversations, and the state was there saying, well, we don't know if we'll ever be able to produce that. And so one can't really fault the court for coming to the conclusion that dismissal was really the only option. Certainly it was not an arbitrary or capricious or unreasonable decision. Well, given that, you know, the standard of review, you know, is obviously in your favor. I mean, that's a tough standard for the state to overcome. However, you know, I harken back on the time that I was handling the felony docket and dealing with issues such as that, and, you know, I would at least try to give either party at least a chance. Maybe if we're early in the stage, we're having issues, okay, I'm going to give you 60 days, 90 days, whatever, and if we come back and you have failed to do this, then we're going to talk about, you know, some sanctions. That didn't happen here. Now, Brandon, you made good arguments on your behalf about the no assurances and things such as that, and that's in there, and the state did not ask for a specific period of time. Like you said, they kind of threw their hands up and shrugged and said, we don't know. And I think that's what may have been influencing the court. The state's attitude was just kind of a shrug, even though these were clearly discoverable materials, the statements by Mr. Knapp, that they had an obligation to produce, and I think the court was entitled to take that into account as well. And if the state had come to the court and said, again, please grant us a continuance for a specific number of days and we'll provide something specific or we'll do something specific, like we will track, you know, sometimes even if a user deletes messages from an account, and I'm not saying that's what happened here, but the platforms still sometimes have those messages on their servers. You know, if the state had said, we will do something specific, like try to see if those deleted messages are still on the platform servers, I think the court would have granted a continuance. But the request that the state made was so vague and indefinite, and just with the attitude that they didn't need to provide these discoverable materials and what was the big deal, that I do think that it was not an abuse of discretion to deny this vague, indefinite request. Okay. Justice Hackett, just as long as you have any final questions. Well, sir, I'm going to follow up on your question, but I think you may have answered it. My question was, given the range or the gamut of sanctions available to the trial court, whether it's bar evidence, bar testimony, denying continuance, a whole range of things available to the court, they jumped to the death penalty of case dismissed. That seems, it's a high standard the state has to meet, but when you jump to the final penalty, that seems almost possibly an abuse of discretion. I think back to, I referee basketball games, and before I give a technical to a coach, you give them a stop sign, you put a warning in the book, and finally say that's it, you get a technical. Here, the judge just said dismissed. It doesn't seem like there was any... Well, the state gave the court nothing to hang its hat on. No, we'll try it, we'll, you know, give us extra time, give us this many days. And because the evidence was pivotal in this case to defense, their ability to rebut or refute allegations of non-consent, any other sanction really would not have sufficed. I mean, the defense needed to show this, again, they needed to show this history of consensual exchanges of sexual videos to rebut allegations of non-consent, and no other remedy could have substituted for not having those materials, but the state was telling the court we don't know if we'll ever be able to produce them. Do you agree with the state that because, we kind of looked at the fact that this was dismissed without prejudice, but the state says because the sexual limitations had already run, it in effect was with prejudice? I don't take any issue with the state's argument there. I agree this did have the effect of a with prejudice dismissal. Okay. Well, for those reasons, I'd ask this court that you affirm the trial court's ruling. Thank you. Well, I'm not sure where to start because I have lots of things I want to say. Just because the state relied on evidence in its investigation, that doesn't mean it was relevant, material, or exculpatory to the charge that was pending against this defendant for the acts that he committed against the victim, HH. And just because she had agreed to provide sexual content videos to him online does not mean that she agreed that the defendant could video the two of them engaged in sexual acts. So, clearly, that was not an online act that occurred. That was an in-person act. So not everything that occurred in their relationship was via text message or social media posts, etc. But there's no evidence that these materials that they alleged were not turned over pertain to the victim, HH. And law enforcement does not have a duty, case law provides, law enforcement does not have a duty to turn over everything that it views to the defendant. In this case, there was evidence and information pertaining to other victims that the defendant was not charged with. There is no duty to retain that or turn that over. It's not relevant to the charge pertaining to HH. I also want to talk about control. Just because Detective Emory viewed the Snapchat, text messages, emails, whatever he viewed, just because he viewed them doesn't mean he was able to download them. And we know he wasn't because they said, SAU didn't have that capability. They had to send it to Madison County for Tim Lawrence to do that. There's no indication either that Detective Emory had a crystal ball that would tell him, oh, when I send these to Detective Lawrence, they may become unavailable, so I better photograph them. At most, he was negligent, maybe, for not taking a photograph at the time that he viewed them. But he had no idea they would become unavailable once they were analyzed by Detective Lawrence. Even Detective Lawrence didn't know that. Would that have been information that would have been relevant if there had been an actual evidentiary hearing in this case? That may be on the state for not subpoenaing their witnesses, but that's for another day. Perhaps, but this burden wasn't the state's. This was a motion for sanctions. Defendant had the burden. Defendant had the burden to show that there was a discovery violation, and the defendant did not do that. He didn't put on any witnesses to say, first of all, what evidence there actually was that Detective Lawrence still had and was analyzing. Defense counsel said, oh, there should be all this information, and there should be a report about procedure, and there should be this and that. But he was speculating what evidence should be available in this case because of other cases unrelated to this one that he had worked previously. Defendant failed to meet his burden for a discovery violation, and for that reason, this trial court abused its discretion in going for the death sentence, as Justice Bond said, of dismissing this case. There's no indication that the trial court exercised any discretion in using other sanctions that might have been more appropriate and less harsh than this, and when the court doesn't exercise any discretion, that's an abuse of discretion in itself. We would ask that this court find that the trial court abused its discretion, remain with instructions to reinstate this case, and allow this case to proceed in the trial court. Thank you. No questions. Thank you. One other question, just to play on that, jumping to the death penalty. When the state, when you say, how long is it going to take you, and they shrug your shoulders, I mean, that's kind of frustrating to a judge also. What's the judge to do when they won't even play along and say, give us 30 days or give us 90 days or give us six months or whatever? The state says, we don't know. I can see the judge gets frustrated and say, you don't know? Then you don't get to try. Case dismissed. I can see the frustration with the court, but just because the trial court is frustrated by that, that doesn't mean that that's the basis to say there was a separate violation and then dismiss the case. The state, to go back to your earlier question, didn't know what evidence was out there. It was still being analyzed. So it clearly didn't know how long it was going to take Detective Lawrence to analyze this voluminous amount of information that it had. But the state did represent to the court, during that hearing, that it had disclosed all of the information that it had that it was going to use at the trial pertaining to this charge against the defendant. None of the other information that Detective Lawrence still had was going to be used against this defendant at trial. The victim had already admitted they had an online sexual relationship, that they had agreed to that. So it wasn't like the defendant had approved that. It was already an admission of this victim, and that was in the report. So frustration or not, this court didn't exercise its discretion when it chose to dismiss the case. It could have used its other powers, subpoena powers, subpoena the law enforcement in court, and forced them to disclose what information they had. Whether it was analyzed or not, the trial court could have used that. It did not do that. The defendant didn't file any motions of limiting which the court could have then granted. There were other ways to enforce this other than dismissal, short of dismissal, and this court didn't even consider it. Any other questions? I think we've peppered them as much as we could today. Nothing left to say. I will, again, this is similar to that last case. I appreciate your artist, though. I think we're very helpful, at least for me. I can't speak for my colleagues, but thank you so much. We're going to take the matter under advisement, obviously, in order in due course. We're going to take a recess.